UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:17-cv-182

| PAMELA K. GASTON, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | ORDER |
| NANCY A. BERRYHILL,[1] | ) |  |
| Acting Commissioner of | ) |  |
| Social Security Administration, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 9), and Memorandum in Support, (Doc. No. 10), and Defendant's Motion for Summary Judgment, (Doc. No. 11), and Memorandum in Support, (Doc. No. 12).

I. BACKGROUND

   A. Procedural Background

Pamela K. Gaston ("Plaintiff") seeks judicial review of Nancy A. Berryhill's ("Defendant") denial of her social security claim. (Doc. No. 1). On October 15, 2013, Plaintiff filed an application for disability insurance benefits under Title II and supplemental security income under Title XVI, alleging an inability to work due to

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill has been substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

1

disabling conditions beginning on August 17, 2012. (Doc. Nos. 8 to 8-1: Administrative Record ("Tr.") at 221, 223). Plaintiff's application was denied initially and upon reconsideration. (Tr. 69–150, 161–78).

On July 25, 2016, Plaintiff, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). (Tr. 37–68). The ALJ issued a decision on August 24, 2016, denying Plaintiff's claim. (Tr. 14–30). Plaintiff filed a request for review of the ALJ's decision on or about August 26, 2016, (Tr. 218), which was denied by the Appeals Council on May 9, 2017, (Tr. at 1–6). Therefore, ALJ's 2016 decision became the final decision of the Commissioner.

B. Factual Background

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes[2] from August 17, 2012 through the date of the ALJ's decision, August 24, 2016. (Tr. 17). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability during the relevant time period. (Tr. 28–29).

The Social Security Administration has established a five-step sequential

---

[2] Under the Social Security Act, 42 U.S.C. §§ 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a) (2012). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;
> (4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and
> (5) whether, considering claimant's RFC, age, education, and work experience, he or she can make an adjustment to other work—if yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 28–29).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since June 29, 2013, the amended alleged disability onset date.[3] (Tr. 19). At the second step, the ALJ found that Plaintiff had the following severe impairments: "spine disorders; a right knee disorder; late effects of injuries to nervous system; affective disorders and a history of substance addictions disorders." (Tr. 19–20). At the third step, the ALJ determined that Plaintiff did not have an "impairment or combination of impairments that [met] or medically equal[ed] one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1." (Tr. 20–21).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform "light work" with the following limitations:

---

[3] At her hearing, Plaintiff amended her onset date to June 29, 2013. (Tr. 40).

3

she could stand/walk for a total of four hours in an eight-hour workday; sit for a total of six hours in an eight-hour workday; occasional postural activities; no climbing of ropes, ladders or scaffolds; avoid concentrated exposure to hazards and vibration; limited to simple, routine, repetitive work; and occasional contact with co-workers and the public.

(Tr. 21). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Id.). The ALJ further opined that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Id. at 33).

At the fourth step, the ALJ found that Plaintiff could not perform his past relevant work. (Tr. 28). Finally, at the fifth step, the ALJ determined that, after "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Id.). Therefore, the ALJ concluded that Plaintiff was not "disabled" from June 29, 2013, through November 2, 2016, the date of the decision. (Tr. 30).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d

4

31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

On appeal, Plaintiff argues that the ALJ erred in his decision by failing to: (1) identify an apparent conflict between the Vocational Expert's ("VE's") testimony and the Dictionary of Occupational Titles ("DOT"); (2) give legally sufficient reasons for finding Plaintiff's testimony not entirely consistent with the evidence; and (3) conduct an adequate function-by-function analysis. (Doc. No. 10). Defendant, however, contends that Plaintiff has failed to point to an error in the ALJ's decision that warrants remand. (Doc. No. 12). The Court agrees with Defendant.

A. <u>There is no apparent conflict between the VE's testimony and the DOT.</u>

Plaintiff makes no arguments to support her conclusion that there exists an apparent conflict between the VE's testimony and the DOT. First, Plaintiff argues an apparent conflicts exists between the RFC limitation "to simple, routine, repetitive work" with only "occasional contact" and the three occupations specified by the VE: office helper, routing clerk, and shipping and receiving weigher. (Doc. No. 10 at 5). Second, Plaintiff argues that an apparent conflict exists between a limitation to simple, routine, repetitive tasks and Reasoning Level 2 and 3 jobs. (<u>Id.</u> at 7).

An ALJ "has an affirmative responsibility to ask [a VE] about any possible conflict between [his] evidence and . . . the DOT." S.S.R. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). "First, the ALJ must '[a]sk the [VE] . . . if the evidence he or she has provided conflicts with information provided in the [DOT]'; and second, '[i]f the [VE]'s . . . evidence appears to conflict with the [DOT],'" the ALJ must then independently "obtain a reasonable explanation for the apparent conflict." <u>Pearson</u>

6

v. Colvin, 810 F.3d 204, 208 (4th Cir. 2015) (citing S.S.R. 00-4p, 2000 WL 1898704, at *1, *4 (Dec. 4, 2000)). An ALJ has not fulfilled his responsibility to resolve conflicts merely because a VE responds "yes" when asked if his testimony is consistent with the DOT. Id. at 209. The conflicts the ALJ must identify are those that are "apparent," which occurs when "the [VE's] testimony seems to, but does not necessarily, conflict with the" DOT. Id.

1. Plaintiff cannot rely on the O*Net to establish an apparent conflict between RFC limitation to "occasional contact" and the identified occupations.

Plaintiff first argues that a limitation to only "occasional contact" apparently conflicts with the three occupations identified by the VE. (Doc. No. 1 at 6). The DOT, however, does not specify the frequency of contact a worker has with others. To make her argument, Plaintiff turns to O*Net to show that the occupations of office helper, routing clerk, and shipping and receiving weigher apparently conflict with the limitation to only "occasional contact." (Id.). Courts, however, have repeatedly rejected claims that an ALJ must resolve any apparent conflicts between VE testimony and publications other than the DOT. Street v. Berryhill, No. 1:17-CV-00204-FDW, 2018 WL 1935866, at *6 (W.D.N.C. Apr. 24, 2018) (citing Best v. Berryhill, No. 4:16-CV-268-D, 2017 WL 6626320 (E.D.N.C. Dec. 28, 2017); and Spurlock v. Berryhill, No. 1:17-CV-411, 2018 WL 791302, at *8 (M.D.N.C. Feb. 8, 2018)). S.S.R. 00-4p only specifies the DOT as the place to identify conflicts. Therefore, Plaintiff may not rely upon the O*Net to establish an apparent conflict

7

between the limitation to only "occasional contact" and the occupations mentioned by the VE.

> 2. "Simple, routine, repetitive work" apparently conflicts with Reasoning Level 3 but not Reasoning Level 2.

Plaintiff second argument claims that the RFC's limitation to "simple, routine, repetitive work" apparently conflicts with jobs requiring Reasoning Levels 2 and 3. (Doc. No. 10 at 7). Office helper and routing clerk both have Reasoning Level 2 requirements. DOT 239.567-010, 1991 WL 672232; DOT 222.687-022, 1991 WL 672133. Reasoning Level 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT, App. C, 1991 WL 688702. On the other hand, shipping-and-receiving weigher has a Reasoning Level 3 requirement. DOT 222.387-074, 1991 WL 672108. Reasoning Level 3 requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form." DOT, App. C, 1991 WL 688702. The Court agrees that a limitation to "simple, routine, repetitive work" apparently conflicts with Reasoning Level 3, but disagrees that such a limitation apparently conflicts with Reasoning Level 2.

While Plaintiff cites to the unpublished Fourth Circuit case, <u>Henderson v. Colvin</u>, for the proposition that a conflict arises between Reasoning Level 2 jobs and a claimant's limitation to simple, routine, repetitive tasks, that case involved a limitation of "only one-to-two step instructions."[4] 643 Fed. App'x 273m 276–77 (4th

---

[4] Plaintiff acknowledges the disparity in <u>Henderson</u>'s limitation to "one-to-two step instructions" as compared to Plaintiff's limitation to "simple, repetitive, routine,

8

Cir. 2016). Reasoning Level 2 jobs "do not imply an apparent conflict with a work limitation to simple, routine, repetitive work." Bethea v. Berryhill, 5:17-CV-145, 2018 WL 1567356, at *4 (W.D.N.C. Mar. 30, 2018); see also Thomas v. Berryhill, No. 3:16-CV-836-MOC, 2017 WL 3595494, at *5 (W.D.N.C. Aug. 21, 2017) (quoting Carringer v. Colvin, No. 2:13-CV-00027-MOC, 2014 WL 1281122, at *3 (W.D.N.C. Mar. 27, 2014) ("there is no direct correlation between the DOT's reasoning levels and a limitation to carrying out simple instructions or performing simple work; thus, jobs requiring an individual to perform such work is consistent with [Reasoning Level 2].")).

In contrast, this Court has found that a limitation to "simple, routine, and repetitive tasks" apparently conflicts with Reasoning level 3. See Lorch v. Berryhill, No. 3:16-CV-00076-RJC, 2017 WL 1234203, at *5 (W.D.N.C. Mar. 31, 2017). Therefore, the Court finds that the shipping-and-receiving weigher apparently conflicts with the RFC limitation. This error is harmless, though. The remaining occupations are numerous enough to account for significant numbers in the national economy. 20 C.F.R. § 404.1566(a). The VE testified that 2,800 jobs for office helper existed in the region and 116,000 existed in the nation. (Doc. No. 8, at 34). The VE also testified that 1,200 jobs for routing clerk existed in the region and 41,600 existed

---

tasks" in her Memorandum in Support of Motion for Summary Judgment. (Doc. No. 10 at 9). Plaintiff also relies on this District's cases of Adkins v. Berryhill, 1:15-CV-000001-RJC, 2017 WL 1089194 (W.D.N.C. Mar. 21, 2017), and Lorch v. Berryhill, No. 3:16-CV-00076-RJC, 2017 WL 1234203 (W.D.N.C. Mar. 31, 2017). (Id.). These cases found an apparent conflict with jobs requiring Reasoning Level 3, and therefore do not hold persuasive value with respect to Plaintiff's challenges for conflict with the VE's recommendation of Reasoning Level 2 occupations.

9

in the nation. (Id.). This Court has previously held that jobs with much lower national numbers still accounted for significant numbers. See Cogar v. Colvin, No. 3:13-CV-380-FDW, 2014 WL 1713795, at *7 (W.D.N.C. Apr. 30, 2014) (where 830 jobs existed in North Carolina and 35,000 jobs existed nationally). Indeed, the Fourth Circuit has held that a mere 110 jobs in the claimant's state constitutes a significant number. Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979).

> B. The ALJ built an accurate and logical bridge from the evidence to his conclusion that Plaintiff's testimony was not entirely credible.

Plaintiff next argues that the ALJ did not provide legally sufficient reasons for finding Plaintiff's testimony inconsistent. (Doc. No. 10 at 10). The ALJ determined that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 27). As such, the ALJ found "the claimant's allegations . . . credible only to the extent that they are consistent with the established residual functional capacity." (Id.). In reaching this determination, the ALJ relied upon Plaintiff's testimony that she cares for her 17-year old disabled son and takes him to school, prepares simple meals, drives, and attends medical appointments, along with other medical evidence. (Id.).

1. The ALJ properly assessed Plaintiff's testimony about her own pain.

Plaintiff first argues that the ALJ fails to explain how these "part time, sporadic activities" are equivalent to a full work week. (Doc. No. 10 at 13). The Court disagrees.

10

An ALJ must explain what symptoms they found inconsistent with the evidence of record and how the ALJ's evaluation led to that conclusion. S.S.R. 16-3p. The ALJ "must build an accurate and logical bridge from the evidence to his conclusion" that the claimant's testimony is not credible. Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016). The ALJ must consider the claimant's subjective pain as part of his analysis of the RFC. Mascio v. Colvin, 780 F.3d 632, 639 (4th Cir. 2015). "[S]ubjective claims of pain," however, "must be supported by objective medical evidence showing the existence of a medical impairment which would reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig v. Chater, 76 F.3d 585, 591 (4th Cir. 1996). A claimant's allegations about her pain may not be discredited simply because it is not "substantiated by objective evidence of the pain itself or its severity." Id. at 595. An ALJ may, however, discredit a claimant's testimony about pain to the extent it is "inconsistent with the available evidence, including objective evidence of the underlying impairment." Id.

Allegations of pain must be incorporated into the RFC determination, but the RFC determination cannot be used to discredit the claimant's allegations of pain. See Mascio, 780 F.3d at 639. An ALJ may examine the claimant's daily activities to determine the credibility of the claimant's testimony of pain. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting the claimant's activities in cooking, washing dishes, and taking care of the house). The Fourth Circuit has found substantial evidence for an ALJ's decision where the ALJ hears "subjective testimony of [the claimant's] pain and, as finder of fact, assess[es] its credibility in the context

of the other evidence before him." Carr v. Sullivan, No. 89-2827, 1990 WL 171370, at *4 (4th Cir. Nov. 8, 1990). Ultimately, "credibility determinations as to a claimant's testimony regarding his pain are for the ALJ to make." Id.

Here, the Court finds substantial evidence for the ALJ's credibility determination. The ALJ found that Plaintiff's statements regarding pain were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 32). The ALJ then went on to describe those sources of medical and "other" evidence, such as claimant's ability "to sit, stand, walk, and move about in a satisfactory manner," Plaintiff's "good use of her upper and lower extremities," Plaintiff's lack of medical attention over pain, and Plaintiff's daily activities. See (Id.). Although the ALJ concluded that Plaintiff's pain testimony was credible only to the extent it was consistent with the RFC, the ALJ considered the Plaintiff's pain testimony in formulating the RFC. (Id.). By considering the Plaintiff's pain testimony in formulating the RFC, the ALJ did not do things "backwards." See Mascio, 780 F.3d at 639.

> 2. An ALJ does not make an improper inference by relying upon the absence of medical evidence.

Plaintiff also argues that the ALJ came to his conclusion by drawing an improper negative inference. (Doc. No. 10 at 14). Specifically, Plaintiff claims that when the ALJ stated "[n]o treating physician has indicated that the claimant is totally disabled due to pain," (Tr. 32), that the ALJ drew an improper conclusion "that

12

[Plaintiff] did not have any functional limitation due to her medical impairments." (Doc. No. 10 at 14). The Court disagrees.

The Fourth Circuit has held that "subjective evidence of pain cannot take precedence over objective medical evidence *or the lack thereof.*" Parris v. Heckler, 733 F.2d 324, 327 (4th Cir. 1984) (emphasis added). Thus, the ALJ is entitled to rely on both the objective medical evidence or lack of objective medical evidence in making an RFC determination. Therefore, it was not improper for the ALJ to use lack of medical records indicating a total disability in formulating the RFC. Indeed, the ALJ relied upon a wide variety of sources in coming to his RFC determination—Plaintiff's physical capabilities, medical opinions of doctors, Plaintiff's subjective testimony of pain, and Plaintiff's physical activities.

C. The ALJ adequately conducted a function-by-function analysis in examining the medical evidence.

Plaintiff lastly argues that the ALJ failed to perform an adequate function-by-function analysis. (Doc. No. 10 at 18). The ALJ gave "significant weight" to the opinions of the State agency psychological consultants. (Tr. 33). These consultants found that Gaston is only able to understand and remember simple 3 step instructions. (Tr. 86, 102, 125, 147). The RFC limitation, however, includes no such limitation. (Id. at 26). Plaintiff contends that it was error for the ALJ to not explain why, despite saying he gave significant weight to the consultant's opinions, he did not further limit Plaintiff to only simple 3 step instructions. (Doc. No. 10 at 19). The Court disagrees.

13

While it is true that the ALJ gave significant weight to the State agency psychological consultants, it is plain that he did not adopt the opinions wholesale. The ALJ gave great weight to specific findings:

> The undersigned gives significant weight to the opinions of the State Agency psychological medical consultants that *the claimant is able to sustain sufficient attention to complete simple routine tasks and she would be moderately limited in her ability to get along with co-workers and the public* as these opinions are supported by medical signs and findings as noted above and are consistent with the claimant's conservative mental health treatment.

(Tr. 28) (emphasis added). The ALJ clearly did not give great weight to all the findings in the State agency opinions and explained what portions of the opinions he found consistent with the medical record summarized earlier in his decision. The State agency psychological consultants listed the "simple 3 step instructions" limitation under Plaintiff's limitations in "understanding and memory." The ALJ did include "understanding and memory" as a portion he considered consistent with the medical record. Furthermore, while Plaintiff did report that she forgot instructions soon after they were given, (Tr. 23), other records reviewed by the ALJ found that Plaintiff could repeat five digits forward and three digits backwards and recall two of three words over a span of 10 minutes,[5] (Tr. 26). The Court, therefore, does not find

---

[5] The latter report was the opinion of Dr. Morton, which found Plaintiff able to understand and recall work instructions. The ALJ gave this opinion little weight because even it was considered too limiting. The ALJ found that Dr. Morton's report was based heavily on the claimant's self-reports, which were subsequently found to be less credible. (Tr. 26). This only adds to the "logical bridge" as to why the ALJ did not specifically adopt the State phycological consultant's limitations on Plaintiff's ability to remember and understand.

14

error in the ALJ's function-by-function analysis, even after considering the findings of the State agency psychological consultant opinions.

IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 9), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 11), is **GRANTED**; and

3. The Clerk of Court is directed to close this case.

Signed: August 15, 2018

Robert J. Conrad, Jr.
United States District Judge